UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FRANCISCO MARTINEZ | No. 22 CR 308<br><br>Judge Steven C. Seeger<br>United States District Judge |

**UPDATED JOINT STATUS REPORT REGARDING PETITION FOR ORDER GRANTING IMMUNITY PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 6002 TO COMPEL TESTIMONY OF WITNESS**

The UNITED STATES OF AMERICA, by ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, and Defendant FRANCISCO MARTINEZ, by his undersigned counsel, state as follows:

**A.  Background**

1.  This bank robbery trial commenced on May 19, 2025.

2.  On May 19, 2025, counsel for defendant informed the Court that he may cross examine a government witness ("Individual GA") regarding her immigration status and her intention to seek to adjust her immigration status in an effort to elicit bias, motive, and interest. Counsel for defendant suggested that the Court advise Individual GA that she may refuse to answer questions about her immigration status if they tend to incriminate her. The Court ordered the government to contact Individual GA's immigration attorney so that he could advise Individual GA as to her Fifth Amendment rights. The undersigned Assistant United States Attorney left a voicemail for Individual GA's immigration attorney on the evening of May 19, 2025, and spoke with Individual GA's immigration attorney by phone on May 20, 2025.

1

3. Individual GA is a former girlfriend of defendant Francisco Martinez. The government expects that Individual GA will testify to defendant's activities on the day of the bank robbery that is the subject of this trial, as well as several other relevant topics. *See* Dkt. 118.

4. Both parties submitted briefs on the consequences of Individual GA's potential invocation of the Fifth Amendment privilege on cross examination. *See* Dkts. 118, 128. Defendant argued the Court should not permit Individual GA to testify at all if she had a valid basis to assert the Fifth Amendment on cross because such invocation would deprive defendant of a meaningful opportunity for cross examination, in violation of the Sixth Amendment. Dkt. 128. Defendant's brief observed that the "government could, of course, immunize [Individual GA] if she has a valid Fifth Amendment right, which would allow full cross-examination." *Id*. at 7.

5. On May 22, 2025, Individual GA informed the government that she intended to invoke her Fifth Amendment rights, but was not specific as to the scope of that invocation.

6. On May 23, 2025, Individual GA appeared in Court and, outside the presence of the jury and without being placed under oath, indicated she would invoke the Fifth Amendment privilege against self-incrimination in response to substantially all questions posed to her.[1]

---

[1] The undersigned Assistant United States Attorney is not aware of a proper basis for Individual GA's invocation of the Fifth Amendment privilege against self-incrimination on any topic other than the circumstances of her entry into the United States.

2

7. On May 23, 2025, at approximately 12:18 p.m., immediately after Individual GA indicated her intention to invoke the Fifth Amendment privilege against self-incrimination, the government informed the Court that it intended to file a petition for an order granting immunity pursuant to 18 U.S.C. § 6002 to compel Individual GA's testimony. Pursuant to the Court's order, the government later filed such a petition and a corrected version of the petition publicly on the docket. Dkts. 129, 130. The government also provided a proposed order granting the petition to the Court's proposed order e-mail address.

8. After the government indicated it would seek an order compelling Individual GA's testimony, the Court appointed Jack Corfman of the Federal Defendant Program to represent Individual GA. Based on the amount of time Mr. Corfman needed to consult with Individual GA, the Court determined that it would not be practical for Individual GA to testify on May 23, 2025. Individual GA is expected to testify on May 28, 2025.[2]

9. The Court ordered the parties to file status reports by Sunday, May 25, 2025, as to the parties' recommendations for resolution of the government's petition and for the procedure that Individual GA's testimony should follow.

10. The government informed Mr. Corfman, counsel for Individual GA, of the substance of this report and will provide a final copy of the report to Mr. Corfman once filed. Mr. Corfman will provide Individual GA's position once he reviews the submission and speaks to his client.

---

[2] Monday, May 26, 2025, is a federal holiday, and the Court is not sitting on Tuesday, May 27, 2025.

B.   **Recommended Resolution and Procedure**

   i.   **The Government's Position**

11.   The government respectfully requests that the Court grant the government's petition and enter the proposed order that the government provided.

   a.   "A United States Attorney may request an order compelling testimony if he determines that such testimony is necessary in the 'public interest.'" *In re Perlin*, 589 F.2d 260, 269 (7th Cir. 1978). Once the government does so, "the United States district court for the judicial district in which the proceeding is or may be held ***shall issue***, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony." 18 U.S.C. § 6003(a) (emphasis added). As described in the petition, the United States Attorney made such a determination in this case. *See* Dkt. 130 ¶ 3. The Court lacks authority to revisit that determination and must issue the order. "The burden of determining the public interest is placed by § 6003 upon the Attorney General and his designees. The district court's function in this regard is largely ministerial." *In re Perlin*, 589 F.2d at 269; *see also United States v. Jarrett*, 133 F.3d 519, 539 (7th Cir. 1998) ("A federal prosecutor also has unreviewable power to decide that the 'public interest' demands granting immunity to a witness in order to compel that witness's testimony.") (citing *Ullmann v. United States*, 350 U.S. 422, 431-34 (1956)); *cf. United States v. Smith*, 542 F.2d 711, 715 (7th Cir. 1976) (Court cannot direct government to immunize witness because "[i]t is peculiarly within the

4

authority of the government . . . not the court, to confer [§ 6003] immunity upon a witness.").

        b.      The government's unreviewable discretion to determine whether to immunize a witness "is cabined only by the requirement that a prosecutor may not immunize witnesses with the intention of distorting the fact-finding process." *United States v. Davis*, 845 F.3d 282, 292 (7th Cir. 2016) (quoting *United States v. Burke*, 425 F.3d 720, 732 (7th Cir. 2014)). That is not the case here. In defendant's own words, granting Individual GA immunity "would allow full cross-examination." Dkt. 128 at 7. In other words, grating the government's petition will enhance the fact-finding process by allowing a witness with relevant information (*see* Dkt. 118) to testify and be subjected to a full and fair cross examination.

        c.      Defendant argues that the Court has authority to deny the petition where doing so is necessary "to protect a witness's constitutional rights." *See infra*. Defendant is wrong that the Court has such authority under the Seventh Circuit caselaw described above. But, even if the Court had such power, there is no reason to believe that a grant of immunity would infringe the witness's or the defendant's constitutional rights here. The primary reason for immunizing the witness is to ensure defendant's Sixth Amendment rights are not violated, and defendant does not argue to the contrary. While defendant points to Individual GA's amorphous "constitutional rights" and the collateral effect of her immunized testimony on hypothetical immigration proceedings, defendant does not identify a constitutional right that might actually be at issue. That is because no constitutional

5

right is implicated. The Fifth Amendment's "sole concern is to afford protection against being forced to give testimony leading to the infliction of penalties affixed to *criminal* acts." *Kastigar v. United States*, 406 U.S. 441, 452 (1972) (emphasis added) (internal quotation and alteration omitted). What is more, Individual GA's immunized testimony is unlikely to have a material effect on the evidence available to use against her in a future immigration proceeding. *First*, Individual GA has made voluntary unprotected statements to law enforcement officers regarding her status and intention to seek adjustment of status based on marriage. Her testimony in this case will likely be cumulative to statements that are already in the government's possession. *Second*, to the extent that Individual GA does seek to adjust her status based on her marriage to a United States citizen, she will need to submit U.S. Citizenship and Immigration Services Form I-485, which will require to her respond to several questions about her immigration history and status. *See, e.g.*, U.S. Citizenship and Immigration Services Form I-485 Question 75: "Have you EVER entered the United States without being inspected and admitted or paroled?"; Question 76: "Since April 1, 1997, have you been unlawfully present in the United States?"

        d.     Defendant has not identified—and the government is not aware of—a single case within the Seventh Circuit where a district court has denied a § 6002 petition. *In re Doe*, 410 F. Supp. 1163 (E.D. Mich. 1976), which defendant cites below, is inapposite. There, a federal law enforcement officer promised the witness that the witness would not have to testify in the Grand Jury, and the court enforced the

promise by denying a petition for immunity. *Id*. at 1165-66.[3] Here, no promises were made to Individual GA that the government would not call her as a witness to testify at trial. The holding in *In re Baldinger*, 356 F. Supp. 153 (C.D. Cal. 1973), which defendant acknowledges the Seventh Circuit recognized as overruled in 1974, similarly does not help defendant. Even if the court had the authority to decline to grant immunity where doing so would infringe on a constitutional right, defendant has failed to identify *any* constitutional right belonging to *any* person that is implicated by Individual GA's immunized testimony.

    ii.    **The Defendant's Position**

12.    Counsel for Defendant assert that courts have the authority to deny a government petition for immunity when doing so is necessary to protect a witness's constitutional rights. *In re Perlin*, cited above, references two cases that reached that conclusion. In *In re Baldinger*, 356 F. Supp. 153, 169 (C.D. Cal. 1973), the district court considered held that—notwithstanding the "shall" language in 18 U.S.C. §6002—it possessed the inherent authority to decline to "engage in any action which deprives a party before it of his constitutional rights." *Baldinger*, 356 F. Supp. at 169.[4]

---

[3] It is also not clear that the holding in *In re Doe* would survive scrutiny in the Seventh Circuit. Specifically, promises by a case agent who lacked actual authority are not binding on the government. *See United States v. Johnson*, 43 F.4th 771, 781 (7th Cir. 2022) ("Third, even if [law enforcement officers] possessed inherent agency authority or apparent authority, neither doctrine is sufficient to 'bind the federal government to a contract; unless the agent had actual authority, any agreement is ineffectual.'").

[4] As the Seventh Circuit recognized in *United States v. Watkins*, 505 F.2d 545, 546 (7th Cir. 1974), in *United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973), the Ninth Circuit rejected *sub silentio Baldinger's* holding that §6002 did not provide immunity coextensive with the scope of the Fifth Amendment and that it thus did not protect against future perjury prosecutions. However, in doing so *Alter* did not reject *Baldinger's* conclusion that courts retain inherent

Citing *Baldinger*, the district court in *In re Doe*, 410 F. Supp. 1163 (E.D. Mich. 1976) recognized that a district court serves a "largely ministerial" role and has "no discretion" to deny a properly requested petition for immunity. *Id*. at 1165. At the same time, a court "may exercise its discretion in denying an immunity order in the face of a violation of a witness' constitutional rights." *Id*. The district court then vacated an immunity order, concluding, "to immunize a prospective Grand Jury witness who has earlier relied upon the promise of a government agent that he would not be the subject of questioning does violence to both judicial integrity and the interests of justice." *Id*. at 1166. In other words, considering the rights of the witness does not call on the Court to revisit the government's determination that immunity is in the public interest. Here, and in defense counsel's view, counsel for Individual GA may very well determine that the proposed immunity order could negatively impact and even deprive his client of her rights in the context of her future immigration proceedings, given that the immunity order only extends to criminal cases. Should counsel for Individual GA raise those concerns, the Court would have the discretion to hear them along with any request to decline to grant the government's petition.

### iii. Individual GA's Position

13. On Monday, May 26, 2025, counsel for Individual GA informed the Court, counsel for the government, and counsel for defendant of the following:

---

authority to not engage in acts that deprive parties of their constitutional rights, which includes declining to issue an immunity order.

a. Individual GA does not intend to make any submission or argument that the Court should deny the government's petition for the reasons contemplated by defendant in ¶ 12, above. If the Court grants the government's petition for immunity, Individual GA will testify as ordered, without invoking her Fifth Amendment privilege. If she is not granted immunity, Individual GA will invoke her Fifth Amendment privilege against self-incrimination. At this time, counsel for Indivdiual GA expects that this invocation would be responsive to both immigration-related questions and also most of the relevant testimony both parties have indicated they intend to elicit as it relates to this matter.

b. Additionally, and in response to the Court's question on Friday, May 23, 2025, it is the Federal Defender Program's recent experience that the Fifth Amendment invocation tends to be outside the presence of the jury, although the law appears to allow either in some circumstances. In the interest of trial efficiency, the Court often does not require our clients to actually invoke the privilege under oath when the proffered invocation by counsel is proper and would result in the witness's testimony being excluded at trial.

14. Should the government's petition be granted, the Court should inform Individual GA of the content of the order outside the presence of the jury. Counsel for Defendant concur that this instruction should be done outside the presence of the jury.

15. The government's position is that the Court's order speaks for itself and no further elaboration is required. Any collateral consequences of Witness GA's

9

immunized testimony pursuant to the Court's order is a matter for Individual GA's attorneys.

16. Counsel for Defendant further request that the Court should specifically inform Individual GA that the immunity order does not preclude the use of her testimony against her in any non-criminal proceedings, and specifically in any immigration proceedings.

17. Upon the granting of the government's petition and Individual GA being informed of the scope of the immunity order, Individual GA's testimony will then proceed, and she will not be permitted to invoke the Fifth Amendment in response to any question.

WHEREFORE, the government requests the Court enter an Order instructing Individual GA to testify and produce evidence in the proceedings before this Court, subject to the provisions of Title 18, United States Code, Section 6002, namely, that no testimony or other information compelled under the Order (or any information directly or indirectly derived from such testimony or other information) may be used against her in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the Order.

Date: May 27, 2025

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: */s/ Adam L. Rosenbloom*
JIMMY L. ARCE
ADAM L. ROSENBLOOM
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-3500

/s/ Joshua G. Herman
**JOSHUA G. HERMAN**
**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson, Blvd., Suite 404
Chicago, IL 60604
Tel: (312) 909-0434
jherman@joshhermanlaw.com

Brad Thomson
**People's Law Office**
1180 N. Milwaukee
Chicago, IL 60642
Tel: 773.235.0070
brad@peopleslawoffice.com